JAMES E. CARTER, EMPLOYEE PLAINTIFF v. FRANK SHELTON, INC., T/D/B/A UTILITY SERVICE COMPANY, EMPLOYER, AETNA LIFE & CASUALTY INSURANCE CO., CARRIER, AND/OR J. E. CARTER COMPANY, EMPLOYER, AMERICAN INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8210IC777

(Filed 7 June 1983)

1. **Master and Servant § 49.1— workers' compensation—employee rather than independent contractor**

    Where plaintiff was in the business of water tank cleaning and painting, where all the plaintiff's work after 1973 was for defendant except for one job, where plaintiff was subject to discharge under the terms of the contract if defendant was not satisfied with his work, where defendant examined the plaintiff's work periodically during any project and at its completion, and where even though the contractor provided for payment only upon successful completion of the project, the records showed that the plaintiff drew a set amount each week out of his bank account, the evidence was sufficient to find an employer-employee relationship between plaintiff and defendant rather than finding plaintiff was an independent contractor. G.S. 97-2(2).

2. **Master and Servant § 81— workers' compensation—sole proprietor—failure to notify insurer of election to be included in policy**

    Plaintiff could not recover from the insurer of his sole proprietorship under G.S. 97-2(2) since he failed to notify his insurer of his election to be included within the workers' compensation coverage.

3. **Master and Servant § 81; Principal and Agent § 1— compensation insurance—independent accountant not agent of insurance company**

    Where plaintiff, as sole proprietor of a sole proprietorship, employed an independent accountant, where plaintiff advised the independent accountant

that he wanted workers' compensation for his sole proprietorship and that he wanted to be covered under it, and where the accountant procured insurance from an agency but failed to notify the insurer of his election to be included, there was insufficient evidence to show that the accountant and the agency were agents of the insurance company in that plaintiff failed to show they acted on the insurance company's behalf or subject to its control.

**4. Estoppel § 4.2; Master and Servant § 81— compensation insurance—equitable estoppel not applicable**

Plaintiff failed to prove that his insurance company was estopped to deny that plaintiff was covered on the date of his injury where (1) the insurance company did not act to make plaintiff think that he was covered under the workers' compensation policy issued for his proprietorship, (2) the plaintiff only notified his accountant and not the insurance company of his desire to be covered under the policy, and (3) there was no duty on the insurance company to notify plaintiff of the 1979 amendment to G.S. 97-2(2) that allowed sole proprietors to be covered under their compensation insurance policy.

**5. Estoppel § 4.6; Master and Servant § 81— compensation insurance—mistaken designation on application—no reliance—no estoppel**

A mistaken designation on plaintiff's application for workers' compensation insurance which indicated his business was a corporation instead of a sole proprietorship did not estop his insurance company from denying coverage since plaintiff failed to show that he relied on the mistaken designation to his detriment.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and award filed 12 February 1982. Heard in the Court of Appeals 17 May 1983.

The plaintiff was injured from a fall while cleaning the inside of a large water tank in Laurel Hill on 2 July 1979. He is now a paraplegic and is unable to move or function below the area of the upper sternum.

He sought workers' compensation from his proprietorship, James E. Carter Company and its insurer, American Insurance Company, and from the corporation which regularly employed him to do tank cleaning and painting, Frank Shelton, Inc., t/d/b/a Utility Service Company, and its insurer, Aetna Life & Casualty.

In 1968, the plaintiff began work for Utility Service. Utility Service bought, sold, and maintained water tanks. The plaintiff learned the trade of cleaning and repairing water tanks while working there.

The plaintiff signed a contract in 1973 to purchase the same equipment from Utility Service that was previously assigned to

his maintenance crew. The plaintiff and Utility Service agreed to work on a shared basis with the company furnishing the material. Jobs were obtained by the company and plaintiff performed the work.

Work done by the plaintiff for Utility Service under this new arrangement was usually evidenced by a written contract. The contracts generally required Utility Service to furnish materials and plaintiff to furnish labor. Specifications for the work were in accordance with a contract between Utility Service and the water tank owner.

The standard contract reserved a number of rights to Utility Service. The company reserved the right to stop work it deemed necessary, to prevent incompetent persons from working on the job, to have corrections made, and to have general jurisdiction over the plaintiff with regard to the quality of the work. The plaintiff and Michael James, a former division manager for Utility Service, testified that the company did inspect the work while it was being done and at its completion.

Utility Service provided the plaintiff with the services of its bookkeeper T. C. Smith during 1973. In late 1973, Smith was replaced with Barry Dobson, an independent accountant. Utility Service paid one-half of Dobson's fee through the end of 1973. Dobson was thereafter paid from the plaintiff's account.

The plaintiff paid salary and expenses to members of his crew on a weekly basis. The accountant wrote the payroll checks on the plaintiff's account based on information supplied by the plaintiff.

The accountant advised Utility Service each week how much was required to cover checks written on the plaintiff's account. The company made the deposit to cover the checks. These deposits were advances of sums to be paid upon completion of jobs even though the standard contracts between Utility Service and the plaintiff provided that the plaintiff would not be paid anything until the job was completed.

The plaintiff drew $300 per week from the business account. This amount was credited against his portion of each contract price.

Before the date of his accident, the plaintiff told Dobson that he wanted to be sure that he was covered by workers' compensation insurance. Trent Cheely, the plaintiff's stepson, was killed on the job in 1974 while working for the plaintiff on a Utility Service project. The claim for Cheely's death was not settled for two years because of a dispute between the plaintiff's insurer and Utility Service's insurer.

The plaintiff changed his insurer to American after Cheely's death. Carter Co. was designated as a corporation on the declarations in American's policy in effect on the accident date. Following the accident, the policy declaration was corrected to show that Carter Co. was a proprietorship, not a corporation.

In a 29 July 1981 opinion, Deputy Commissioner Ben E. Roney, Jr. dismissed the plaintiff's claim for lack of subject matter jurisdiction. He concluded that neither insurer provided individual workers' compensation insurance for the plaintiff on the accident date.

The full Commission affirmed and adopted Roney's opinion on 12 February 1982. From that decision, the plaintiff appealed.

*Egerton, Fowler & Marshall, by Darl L. Fowler and Smith, Patterson, Follin, Curtis, James & Harkavy, by Jonathan R. Harkavy and Henry N. Patterson, Jr., for plaintiff-appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Jeri L. Whitfield and J. Donald Cowan, for defendant-appellees J. E. Carter Co. and American Insurance Company.*

*No brief filed for defendant-appellees Frank Shelton, Inc., t/d/b/a Utility Service Co. and Aetna Life & Casualty Insurance Company.*

ARNOLD, Judge.

Under G.S. 97-86 and our case law, it is axiomatic that an opinion and award entered by the Industrial Commission will not be disturbed on appeal unless a patent error of law exists therein. *See, e.g., Hoffman v. Ryder Truck Lines, Inc.,* 306 N.C. 502, 505, 293 S.E. 2d 807, 809 (1982). The Commission's findings of fact are conclusive on appeal if they are supported by competent evidence even though there is evidence to the contrary. *Click v. Freight Carriers,* 300 N.C. 164, 166, 265 S.E. 2d 389, 390 (1980).

We consider the liability of the two insurers separately because of the different issues involved in each situation.

UTILITY SERVICE-AETNA LIFE & CASUALTY APPEAL

[1] If the plaintiff was an employee of Utility Service on the date of the accident, then he can collect workers' compensation insurance from Aetna. The opinion of the Commission concluded that the plaintiff was not an employee, but instead was an independent contractor. It also held that the plaintiff was not covered under an Aetna individual workers' compensation policy on the accident date. From those conclusions, the plaintiff appealed.

Because the Act only applies where the employer-employee relationship exists, the question of whether it existed at the time of the accident is jurisdictional. As a result, the Commission's finding on jurisdiction is reviewable on appeal. *Vaughn v. N.C. Dep't of Human Resources*, 296 N.C. 683, 692, 252 S.E. 2d 792, 798 (1979). The rule that the Act is to be liberally construed does not apply to determine if the Act is applicable. *Hicks v. Guilford County*, 267 N.C. 364, 366, 148 S.E. 2d 240, 242 (1966).

G.S. 97-2(2) defines "employee" as "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . but excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer. . . ."

This statutory definition, however, adds nothing to the common law meaning of the term. As a result, whether the employer-employee relationship existed at the time of the accident is to be determined by ordinary common law tests. The plaintiff has the burden of proof on this issue. *Lucas v. Li'l General Stores*, 289 N.C. 212, 218, 221 S.E. 2d 257, 261-62 (1976).

The law in North Carolina on the relationship between master and servant was outlined in *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944). The Supreme Court found the vital test to be if "the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Id.* at 15, 29 S.E. 2d at 140. Right of control, not whether

it was actually utilized, is determinative. *Scott v. Lumber Co.*, 232 N.C. 162, 165, 59 S.E. 2d 425, 427 (1950). *See also* 1C A. Larson, The Law of Workmen's Compensation § 43.10 n. 2 (1980) (North Carolina sees the amount of control exercised by the alleged employer as determinative on this question).

In summarizing the case law, *Hayes* enunciated a number of elements to consider in the determination.

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. (Citations omitted.)

> The presence of no particular one of these *indicia* is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee.

*Id.* at 16, 29 S.E. 2d at 140. A number of cases have relied on the *Hayes* factors in answering this question. *See, e.g., Morse v. Curtis*, 276 N.C. 371, 378, 172 S.E. 2d 495, 500 (1970).

The facts here lead us to conclude that the plaintiff was an employee of Utility Service for purposes of workers' compensation insurance and that Aetna is liable as Utility Service's insurer.

First, all of the plaintiff's work after 1973 was for Utility Service except for one job. He was in regular employ of the company. Utility Service procured business for the plaintiff and then notified him about the job opportunity.

Second, the plaintiff was subject to discharge under the terms of the contract if Utility Service was not satisfied with the

work. The company was given "general jurisdiction over the contractor with regard to the quality of the work" in the contract. Examination of contract terms is a factor to be considered in determining if an employer-employee relationship exists. *See Askew v. Tire Co.*, 264 N.C. 168, 172, 141 S.E. 2d 280, 283 (1965).

Third, Utility Service examined the plaintiff's work periodically during any project and at its completion. Reserved rights in the contract of on-the-job inspection and stopping work for corrections are further indications of the company's control. The contract also allowed Utility Service to stop work to prevent incompetent persons from working on a job, which limited the plaintiff's ability to choose his assistants.

Finally, even though the contract provided for payment only upon successful completion of a project, the record shows that the plaintiff drew a set amount each week out of his bank account. That account was replenished each week by Utility Service in an amount suggested by the plaintiff's accountant.

Because we find that Utility Service and the plaintiff were in an employer-employee relationship so as to make Aetna liable for the plaintiff's accident, it is unnecessary to discuss whether Aetna is estopped from denying that the plaintiff is covered.

CARTER CO.-AMERICAN INSURANCE APPEAL

[2] The plaintiff first argues that a part of G.S. 97-2(2) that was added in 1979, *see* 1979 N.C. Sess. Laws, ch. 86, allows him to recover from the insurer of his sole proprietorship. That amendment became effective on 1 July 1979, the day before the plaintiff's injury.

The relevant portion of the statute states:

Any sole proprietor or partner of a business whose employees are eligible for benefits under this Article may elect to be included as an employee under the workers' compensation coverage of such business if he is actively engaged in the operation of the business and if the insurer is notified of his election to be so included. Any such sole proprietor or partner shall, upon such election, be entitled to employee benefits and be subject to employee responsibilities prescribed in this Article.

This statute does not help the plaintiff because he did not notify American of his election to be included. We also reject his contention that sole proprietors were included before the 1979 amendment. That change is an indication that a specific statutory authorization was necessary to include them. The plaintiff was on notice of this fact since his accountant Dobson informed him prior to the amendment that one advantage of corporate status would be to obtain workers' compensation insurance on himself.

[3] The plaintiff next contends that he can recover from American because he advised Dobson that he wanted workers' compensation insurance for his sole proprietorship. He argues that Dobson and the Van Noppen Agency, from whom Dobson obtained insurance for the plaintiff, were American's agents and bound American as principal. We disagree.

The RESTATEMENT (SECOND) OF AGENCY § 1 (1) (1958) defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

There is insufficient evidence here to show that Dobson and Van Noppen were American's agents. It has not been shown that they acted on American's behalf or subject to its control.

The fact that the plaintiff authorized Dobson to talk to insurance companies on his behalf does not make Dobson the agent of American. If anything, Dobson was the plaintiff's agent.

[4] Finally, the plaintiff argues that American is estopped to deny that the plaintiff was covered on the date of his injury because it accepted premiums and was silent when he made requests for coverage to Dobson.

Equitable estoppel arises "when an individual by his acts, representations, admissions, or by his silence when he has a duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and such other person rightfully relies and acts upon that belief to his detriment." *Thompson v. Soles*, 299 N.C. 484, 487, 263 S.E. 2d 599, 602 (1980).

This is not an appropriate case for equitable estoppel. First, American did no act to make the plaintiff think that he was

covered under the workers' compensation policy issued for his proprietorship.

Second, knowledge that the plaintiff wanted to be covered cannot be attributed to American. The plaintiff only notified Dobson of his desire. As the plaintiff stated in his testimony, "I never talked with anyone at the Van Noppen Agency or American Insurance Company about workmen's compensation insurance, but I authorized Mr. Dobson to talk to the insurance companies on my behalf." Dobson was not American's agent, as discussed above, and his acts cannot bind the insurer.

Third, there was no duty on American to notify the plaintiff of the 1979 amendment to G.S. 97-2(2). That statute makes it the claimant's responsibility to notify the insurer of his desire to be covered as a sole proprietor.

[5] Finally, the plaintiff contends that the mistaken designation on his application for workers' compensation insurance that his business was a corporation should estop American from denying coverage. He argues that the mistake led all parties to believe that he was covered.

Before the plaintiff can use this mistake as a basis for estoppel, he must show that he relied on it to his detriment. *See Matthieu v. Piedmont Natural Gas Co.*, 269 N.C. 212, 216, 152 S.E. 2d 336, 340 (1967). The requisite facts are not present here.

The plaintiff testified that he never told anyone that he was doing business as a corporation and has shown no reliance on any act or silence of American to his detriment. Dobson was the person the plaintiff informed about his desire to be covered. American is not bound by that statement.

For these reasons, we affirm the dismissal of the plaintiff's complaint against J. E. Carter Company and its insurer, American Insurance Company.

Reversed in part; affirmed in part.

Judges WEBB and BRASWELL concur.