WILLIAM A. STROUD v. CASWELL CENTER

No. COA95-903

(Filed 3 December 1996)

**Workers' Compensation §§ 253, 233 (NCI4th)— asbestosis— retirement—disability—findings**

An Industrial Commission award was remanded where plaintiff was exposed to asbestos in the course of employment with defendant, retired at age sixty, filed a claim alleging that he suffered from asbestosis, was paid 104 weeks of compensation, the parties entered into a Form 21 agreement whereby defendant acknowledged liability for plaintiff's asbestosis, a hearing was held to determine plaintiff's entitlement to further compensation, he was awarded $4,000 for permanent damage to his lungs, the deputy commissioner informed plaintiff's counsel that the "burden is on you to prove that [plaintiff] retired because of the disease" and awarded no additional temporary total disability compensation, and the full Commission adopted and affirmed the deputy commissioner's findings and conclusions. The Commission failed to make any findings of fact regarding plaintiff's capacity to earn wages at the conclusion of his initial 104 week term of compensation, but rather simply recited that plaintiff has not looked for work or been in the job market since his retirement. Plaintiff is not barred from seeking disability benefits if his retirement was for reasons unrelated to his occupational disease. Also, although defendant argues that there was substantial evidence that any incapacity to work was caused by prior cigarette smoking, the Commission failed to make its own determination as to the origins of plaintiff's impairment. The cause of plaintiff's disability need not be an "either/or" proposition.

**Am Jur 2d, Pensions and Retirement Funds § 415; Workers' Compensation §§ 319, 399, 661, 709, 719.**

**Total disability or the like as referring to inability to work in usual occupation or in other occupations. 21 LR3d 1155.**

Appeal by plaintiff from Opinion and Award filed 16 February 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 April 1996.

*Robin E. Hudson for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General William H. Borden, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals the decision of the North Carolina Industrial Commission (the Commission) denying his claim grounded upon reduction of earning capacity, and limiting him to benefits under N.C.G.S. § 97-31 (1991). We reverse the Commission's decision.

Pertinent facts and procedural information are as follows: plaintiff was employed by defendant from 1 June 1961 until 31 May 1987, working successively as farm-hand, general utility person, maintenance mechanic, and plumber. In the course of employment with defendant, plaintiff was exposed to asbestos. He retired in May 1987 at age sixty, after working for defendant twenty-five years and ten months, under a newly enacted regulation permitting retirement by state employees at age sixty with twenty-five years service.

Plaintiff filed a workers' compensation claim 20 September 1989, alleging he suffered from the occupational disease of asbestosis. Dr. Allen Hayes, a physician with the Industrial Commission's advisory medical committee, examined plaintiff 11 April 1990 and diagnosed him as exhibiting a "[m]ild obstructive pulmonary impairment, probably related to prior smoking," and also "[i]nterstitial changes consistent with pulmonary fibrosis (asbestosis)." The Commission thereafter ordered that plaintiff be paid 104 weeks of compensation pursuant to N.C.G.S. § 97-61.5 (1991), and the parties entered into a Form 21 agreement whereby defendant acknowledged liability for plaintiff's asbestosis.

A hearing was held 14 October 1993 to determine plaintiff's entitlement to further compensation. The Deputy Commissioner, weighing the testimony of Dr. Roy Everett, plaintiff's treating physician, and medical records assembled by the Commission's advisory panel, found as fact that:

11. The medical evidence in this case is somewhat inconsistent, but nonetheless reveals some asbestosis with permanent impairment.

12. The plaintiff voluntarily retired in 1987 after twenty-five years and 10 months of service with the state of North Carolina

and he has not looked for work or been in the job market since his retirement. There is no evidence that asbestosis caused the plaintiff to retire.

The Deputy Commissioner also concluded as matter of law that:

1. The plaintiff was compensated for 104 weeks of temporary total disability compensation, but the evidence fails to establish that he was thereafter unable to work or unable to earn the same or greater wage in the same or any other like employment as a result of asbestosis as opposed to his voluntary retirement on May 31, 1987, and his resulting lack of efforts to seek employment after retirement. The plaintiff is not entitled to any additional temporary total disability compensation pursuant to the provisions of N.C.G.S. § 97-29 or N.C.G.S. § 97-61.6.

Plaintiff was awarded $4,000 under N.C.G.S. § 97-31(24) (1991) for permanent damage to his lungs. The Full Commission adopted and affirmed the Deputy Commissioner's findings and conclusions in an Opinion and Award filed 16 February 1995. Plaintiff filed notice of appeal to this Court 16 March 1995.

---

At the hearing below, the Deputy Commissioner informed plaintiff's counsel that "the burden is on you to prove that [plaintiff] retired because of the disease." As *Heffner v. Cone Mills Corp.*, 83 N.C. App. 84, 349 S.E.2d 70 (1986), demonstrates, the Deputy Commissioner misspoke.

The plaintiff in *Heffner* retired in early 1984 at age sixty-five, when he learned that the plant at which he was employed would be closing. "Knowing that he shortly would lose his job, plaintiff applied for Social Security retirement benefits and quit his job." *Id.* at 85, 349 S.E.2d at 72. Plaintiff thereafter filed a claim 16 May 1984 seeking workers' compensation for an occupational lung disease. *Id.* After a hearing, the Commission determined plaintiff " 'sustained no incapacity for work resulting from his occupational disease,' " *id.* at 87, 349 S.E.2d at 74, and limited his benefits to those attainable under G.S. § 97-31(24).

The *Heffner* court held that:

[i]n denying plaintiff's claim for disability compensation, the Commission apparently placed great reliance on its conclusion . . . that the plaintiff's lack of earnings was due to his desire to retire and the closing of the plant where he was working. In

doing so, we believe the Commission acted under a misappre-hension of the law. Because disability measures an employee's present ability to earn wages, *Webb v. Pauline Knitting Industries*, 78 N.C. App. 184, 336 S.E.2d 645 (1985), and is unre-lated to a decision to withdraw from the labor force by retire-ment, the Commission may not deny disability benefits because the claimant retired where there is evidence of diminished earn-ing capacity caused by an occupational disease.

*Id.* at 88, 349 S.E.2d at 74 (emphasis omitted). The *Heffner* rule is consistent with G.S. § 97-29, the statute through which claimants are awarded benefits for total disability, in that the section provides that compensation is to be paid "during the lifetime of the injured employee," and payments are not terminated when a claimant reaches an age at which he or she would have retired if able to work.

The facts of the present case parallel those of *Heffner*. Like the plaintiff therein, plaintiff *sub judice* is not barred from seeking dis-ability benefits if his retirement was for reasons unrelated to his occupational disease. The pertinent issue is whether plaintiff, subse-quent to retirement and at expiration of the 104 weeks of compensa-tion pursuant to G.S. § 97-61.5, experienced a loss in wage-earning capacity.

Also relevant to plaintiff's appeal is *Lackey v. R.L. Stowe Mills*, 106 N.C. App. 658, 418 S.E.2d 517 (1992), a case in which the Commission ruled the claimant's " 'actual earning capacity [could not] be determined because, having retired, she [] made no effort to obtain employment.' " *Id.* at 660, 418 S.E.2d at 518-19. This Court pointed out that

the employee need not prove he unsuccessfully sought em-ployment if the employee proves he is unable to obtain employ-ment. . . . Where . . . an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exer-cise of seeking a job which does not exist.

*Id.* at 661, 418 S.E.2d at 519 (quoting *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986)).

In case *sub judice*, plaintiff testified he had completed the eighth grade, had worked only in manual labor, and further that he had not been able to engage in any type of physical work since his retirement.

The Commission, however, failed to make any findings of fact regarding his *capacity* to earn wages at the conclusion of his initial 104 week term of compensation, but rather simply recited that plaintiff "has not looked for work or been in the job market since his retirement." As in *Heffner*, the Commission's findings in the present case are "insufficient to support its conclusion that the plaintiff [is] not disabled." 83 N.C. App. at 88, 349 S.E.2d at 74.

Defendant argues substantial evidence indicates that any incapacity to work on the part of plaintiff is due to air flow obstruction caused by prior cigarette smoking as opposed to asbestosis. The Commission's findings state that "[t]he advisory medical committee opined . . . that the plaintiff's primary physiologic impairment is that of air flow obstruction most likely caused by prior cigarette use and not by his asbestos exposure," and that Dr. Everett believed "plaintiff's symptoms were more related to the asbestos exposure." The Commission, however, failed to make its own determination as to the origins of plaintiff's impairment.

We note that the cause of plaintiff's disability need not be an "either/or" proposition.

> When a claimant becomes incapacitated for work and part of that incapacity is caused, accelerated or aggravated by an occupational disease and the remainder of that incapacity for work is not [so caused], the Workers' Compensation Act of North Carolina requires compensation only for that portion of the disability caused, accelerated, or aggravated by the occupational disease.

*Morrison v. Burlington Industries*, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981); *see also Pitman v. Feldspar Corp.*, 87 N.C. App. 208, 216-17, 360 S.E.2d 696, 700 (1987) (explaining steps Commission must take in an apportionment case).

In sum, the Opinion and Award of the Commission is reversed and this matter remanded to the Commission for further findings of fact, receipt of such additional evidence as the Commission deems appropriate, and entry of an Opinion and Award consistent with the opinion herein.

Reversed and remanded with directions.

Judges GREENE and MARTIN, Mark D., concur.