The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times.
3. Prior to the hearing before the Deputy Commissioner, the parties agreed that defendant would accept as compensable the claim identified as Industrial Commission No. 592477, involving a cyst on plaintiff's right wrist. As part of this agreement, plaintiff agreed that he was paid sickness and accident disability benefits by the defendant during the eight and one-seventh (8 1/7) weeks he was out of work from 19 September 1995 through 14 November 1995 and that this payment would count as a credit against the temporary total disability he would be owed during that time period pursuant to N.C. Gen. Stat. § 97-42.
4. The parties stipulated into evidence 66 pages of medical records and the corresponding copies of the same.
5. Following the hearing before the Deputy Commissioner, the parties deposed Dr. Paul Perlik and Dr. Leon Dickerson. The deposition transcripts of these two physicians were received into evidence.
***********
The Full Commission finds the facts as follows:
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 62-year-old male who had worked for defendant-employer since 1972 and had been a booker/wind-up person for the last ten years of his employment.
2. Beginning on 19 September 1995, plaintiff missed eight and one-seventh (8 1/7) weeks of work following surgery for a ganglion cyst on his right wrist performed by Dr. Paul Perlik, a physician with Charlotte Orthopedic Specialists.
3. Plaintiff returned to work on 14 November 1995 in the same position he had prior to his surgery and without any restrictions from Dr. Perlik.
4. On 24 September 1995, at plaintiff's request, defendant provided plaintiff an "Estimate of Benefits" showing the amount plaintiff's pension plan would pay based on the proposed retirement date he gave defendant to use for this estimate. Plaintiff initially provided an assumed retirement date of 1 October 1996. On 6 December 1995, at plaintiff's request, defendant provided another "Estimate of Benefits" based on an assumed retirement date of 1 June 1996.
5. Plaintiff last saw Dr. Perlik for his wrist problems on 5 February 1996. Plaintiff told Dr. Perlik that it was his intent to retire the first week in June 1996.
6. On 28 February 1996, while working in his same position with defendant, plaintiff experienced a slip and fall on the job, landing on his buttocks and experiencing back pain. Plaintiff saw Dr. Perlik on 1 March 1996 for his back problem and had no complaints of any ongoing wrist pain.
7. On 5 March 1996, the parties signed a Form 21 agreement whereby defendant agreed to pay compensation to plaintiff for his back injury at a rate of $448.44 per week.
8. Plaintiff began treating with Dr. Leon Dickerson, also of Charlotte Orthopedic Specialists, for his back problems on 11 March 1996, and at that time also complained of right wrist pain.
9. Plaintiff returned to work for defendant for a few days in late March 1996 and early April 1996, performing miscellaneous light duty work.
10. Pursuant to the collective bargaining agreement with the union representing its employees, defendant attempts to offer employees work within their restrictions, when available, at a pay rate of one hundred and twenty percent (120%) of the standard wage the employee was making at the time of injury. This employment, miscellaneous light duty, is a part of every employee's full duty job with defendant but is not a job classification in and of itself and is not posted for job bids.
11. Specific miscellaneous light duty work is not always available, and availability of a particular assignment depends, at least in part, on the budgeted labor hours for the departments in defendant's plant.
12. In early April 1996, plaintiff was informed that miscellaneous light duty was no longer available to him, but that he would be contacted by defendant when miscellaneous light duty again became available.
13. There is no record of plaintiff contacting defendant from the time he last worked for defendant in early April 1996 until he phoned Vince McGarvey, defendant's Human Resources leader, in late September of 1996 with regard to his decision to seek early retirement. Plaintiff stated during the hearing before the Deputy Commissioner that he would not return to work for defendant in the light duty position because he was "retired."
14. On 30 May 1996, plaintiff and his wife purchased a hot tub for his home. On 20 June 1996, at plaintiff's request, Dr. Dickerson filled out a prescription for a hot tub. While Dr. Dickerson acknowledged that a hot tub would feel "very good" on one's back, he did not necessarily recommend a hot tub for plaintiff.
15. Plaintiff underwent a Functional Capacity Evaluation/Return to Work Evaluation on 14 June 1996. The Functional Capacity Evaluation reflected that plaintiff could lift a maximum of twenty-two (22) pounds and carry seventeen (17) pounds maximum and placed him in a "sedentary work category."
16. Dr. Dickerson was unable to identify the cause of plaintiff's back pain and was unable to effect any relief. It was Dr. Dickerson's opinion that plaintiff's condition had remained essentially the same between the first time he saw plaintiff in March 1996 and plaintiff's last visit on 20 June 1996. Dr. Dickerson gave plaintiff a three percent (3%) permanent partial impairment rating to his back.
17. On 27 September 1996, defendant notified plaintiff that miscellaneous light duty was again available to him immediately. This light duty consisted of sweeping floors, sweeping and recovering black carbon dust, picking up trash on the grounds at the plant, office and clerical work, and cleaning computer terminals.
18. Plaintiff did not attempt to perform the light duty work offered in September 1996, nor did plaintiff question its physical demands relative to his work restrictions. Instead of returning to the miscellaneous light duty work, plaintiff contacted Vince McGarvey and sought extra time within which to make his decision regarding retirement. On 30 September 1996, plaintiff contacted Mr. McGarvey and informed him that he was going to retire effective 1 October 1996. Plaintiff never returned to work with defendant.
19. Defendant has shown no reason why light duty employment was not offered to plaintiff between April and December 1996 other than the unavailability of this employment. The unavailability of light duty work for five months indicates that this work is sporadic and not regularly available.
20. Following his retirement, plaintiff began receiving monthly pension benefits in the amount of six hundred forty nine and 20/100 dollars ($649.20) per month. Plaintiff continues to receive these benefits on a monthly basis from defendant.
21. Defendant concedes that plaintiff was presumed totally disabled during the period between 28 February and 27 September 1996, except during the period of time in March and April 1996 when plaintiff worked.
22. Plaintiff argues in his brief to the Full Commission that the Form 21 agreement, on which plaintiff relies for the presumption of continuing disability, should be set aside on grounds of mutual mistake, but plaintiff has not produced sufficient competent evidence that the parties acted under a mutual mistaken assumption as to the weekly compensation rate.
22. Defendant had reasonable grounds to defend this claim.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff experienced an admitted injury by accident arising out of and in the course of his employment with defendant on 28 February 1996, when he slipped and fell on his buttocks, straining his lower back. N.C. Gen. Stat. §§ 97-2 (6), 97-29.
2. As conceded by defendant, plaintiff was presumed totally disabled from 29 February 1996 until late March 1996 when he returned to work. In early April 1996, when miscellaneous light duty was no longer available, plaintiff was again presumed to be totally disabled. N.C. Gen. Stat. § 97-29.
3. The miscellaneous light duty work offered by defendant on 17 September 1996 was not suitable employment or evidence of plaintiff's ability to earn wages at that time. N.C. Gen. Stat. § 97-29; Saums v. Raleigh Community Hosp., 346 N.C. 760,487 S.E.2d 746 (1997).
4. Defendant has failed to rebut the presumption of disability by showing that suitable jobs would have been available had plaintiff decided not to retire. N.C. Gen. Stat. § 97-29;Heffner v. Cone Mills Corp., 83 N.C. App. 84, 349 S.E.2d 70
(1986).
5. The hot tub purchased by plaintiff and his wife was not a medical supply or treatment reasonably required to effect a cure, give relief, or lessen the period of disability of the three percent (3%) permanent partial disability to plaintiff's back. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. The Form 21 agreement should not be set aside on ground of mutual mistake. N.C. Gen. Stat. §§ 97-17, 97-82.
7. Plaintiff is not entitled to attorney's fees for defendant's defense of this claim. N.C. Gen. Stat. § 97-88.1.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff temporary total disability benefits pursuant to the Form 21 entered into by the parties from 28 February 1996 and continuing until plaintiff returns to work or defendant provides evidence that suitable jobs are available, except for the days plaintiff worked in late March and early April 1996. Any past due amount shall be paid in a lump sum payment. Defendant is entitled to a credit for payments made after February 28, 1996. If the defendant provides vocational rehabilitation services, plaintiff is obligated to cooperate as a condition of continued receipt of the benefits awarded herein.
2. Defendant shall bear the costs.
3. A reasonable attorney's fee in the amount of twenty five percent (25%) of the compensation which has accrued shall be paid in a lump sum directly to plaintiff's counsel. Thereafter, every fourth compensation payment shall be forwarded directly to plaintiff's counsel.
 S/ ____________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _______________ CHRISTOPHER SCOTT COMMISSIONER
S/ _______________ THOMAS J. BOLCH COMMISSIONER